**UNITED STATES OF AMERICA, Plaintiff**

**v.**

**GEENS VICTOR CHARLES, Defendant**

Crim. No. 1995-0070

District Court of the Virgin Islands

Div. of St. Croix

November 19, 1996

Eszart A. Wynter, Esq., *for Defendant*

Richard M. Prendergast, Esq., *for Plaintiff*

FINCH, *Judge*

**OPINION**

On February 5, 1996, a jury convicted defendant Geens Victor Charles of using a social security number not assigned to him, in violation of 42 U.S.C. § 408(a)(7)(B). Charles now argues that there is insufficient evidence to support his conviction and moves this Court for a judgment of acquittal or, in the alternative, for a new trial.

**Facts**

The evidence, viewed in the light most favorable to the government, is as follows: In August 1995, an agent of the United States Department of Immigration and Naturalization visited defendant at his home to interview the defendant regarding an investigation unrelated to the instant offense. When the agent asked defendant for identification, defendant proffered a Virgin Islands driver's license bearing his photograph, a thumbprint and signature, and the social security number 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. An investigation by the Social Security Administration revealed that the social security number listed on the defendant's license did not belong to the defendant. The defendant was ultimately charged with using a social security number not assigned to him, in violation of 42 U.S.C. § 408(a)(7)(B).

At trial, Leatrice James, supervisor of the Virgin Islands Department of Public Safety's Licensing Section, described the process by which an applicant obtains a driver's license. According to James, the applicant would first complete a medical form. The applicant would then return the medical form to an agent of the licensing division who would record on the form the individual's social security and birth certificate numbers. The applicant would in turn sign the form, verifying the information contained therein. Having concluded the first stage of the process, the applicant would be required to take a written examination and a road test. After successfully completing these examinations, the applicant would fill out a second form, again providing his social security number and again signing the document for verification. The licensing agent would then photograph the applicant and provide him with a laminated license. James testified that the Department would not

issue a driver's license to an individual who lacked a social security number.

Notably, the government proffered no direct evidence to show that defendant had followed the steps described by James. Although James testified that defendant's license was printed by the Virgin Islands Department of Public Safety, she was unable to produce any record of defendant's application nor could she identify the defendant as the person who had actually applied for the license. In explanation, James stated that the Department as a matter of policy destroyed all license applications within three months of the issuance of a license; thus the records underlying defendant's license, issued June 18, 1993, no longer existed. The government, through its experts, did adduce evidence to show that the thumbprint and signature on defendant's license indeed were those of the defendant, however.

Defendant, in defense, contended that he had not obtained his license in the manner described by James. In support of this defense, defendant's wife testified that the defendant had not "gone through the regular procedure," but rather had illegally purchased the license.[1]

At the close of evidence, the defendant moved for a judgment of acquittal, contending that the government had failed to prove that he misrepresented a social security number to anyone. The Court denied defendant's motion and the case went to the jury, which found the defendant guilty as charged. The defendant now asks this Court to reconsider its earlier decision denying defendant's motion for judgment of acquittal or, in the alternative, to grant a new trial.

### Discussion

■ For a judgment of acquittal to be granted, the court must decide, as a matter of law, that the evidence presented at trial — both direct and circumstantial — was insufficient to support the conviction. *United States v. Cohen*, 455 F. Supp. 843, 852 & n.7 (E.D.

---

[1] When questioned about this possibility, James conceded that she had heard "rumors" that in the past applicants had purchased driver's licenses from employees at the Department of Public Safety, thereby bypassing normal procedures.

Pa. 1978), *aff'd*, 594 F.2d 855 (3d Cir.), *cert. denied*, 441 U.S. 947, 60 L. Ed. 2d 1050, 99 S. Ct. 2169 (1979). In making this decision, the trial court is required to view the evidence in the light most favorable to the prosecution and to draw all reasonable inferences therefrom in the government's favor. *See United States v. Ashfield*, 735 F.2d 101, 106 (3d Cir.), *cert. denied*, 469 U.S. 858 (1984). Further, this decision requires that strict deference be accorded the jury's findings; the court does not "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." *Woodby v. INS*, 385 U.S. 276, 292, 17 L. Ed. 2d 362, 87 S. Ct. 483 (1966). Rather, the relevant inquiry is whether, in light of the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Johnson v. Louisiana*, 406 U.S. 356, 362, 32 L. Ed. 2d 152, 92 S. Ct. 1620 (1972). "Our task is not to decide what we would conclude had we been the finders of fact; instead, we are limited to determining whether the conclusion chosen by the factfinders was permissible." *Ashfield*, 735 F.2d at 106.

■ The court is provided somewhat more discretion when judging a Fed. R. Crim. P. 33 motion for a new trial. Under Rule 33, the court may grant a new trial "in the interest of justice." In assessing such "interest," the court may weigh the evidence and credibility of witnesses; if the court determines that there has been a miscarriage of justice, the court may order a new trial. *See United States v. Bevans*, 728 F. Supp. 340, 343 (E.D. Pa.) (citing cases), *aff'd*, 914 F.2d 244 (3d Cir. 1990). With these standards in mind, the Court turns to the merits of defendant's claim that insufficient evidence supports his conviction.

■ Section 408(a)(7)(B), the statute under which defendant was convicted, provides in pertinent part:

> whoever . . . with intent to deceive, falsely represents a number to be the social security account number assigned by the Secretary to him or to another person, when in fact such number is not the social security account number assigned by the Secretary to him or to such other person . . . shall be guilty of a felony . . . .

42 U.S.C. § 408(a)(7)(B). From this statute the required elements of

a violation can be discerned. To convict a defendant under 42 U.S.C. § 408(a)(7)(B), the government must prove that the defendant: (1) for any purpose; (2) with the intent to deceive; (3) represented a particular social security account number to be his or another person's; (4) which representation was false. *See United States v. McKnight*, 17 F.3d 1139, 1143 (8th Cir.), *cert. denied*, 130 L. Ed. 2d 192, 115 S. Ct. 275 (1994).

Defendant argues that the government at trial failed to produce adequate evidence of the latter elements of this offense — that is, that the government did not prove beyond a reasonable doubt that the defendant ever represented as his own a false social security number. Although the Court finds this to be a very close question, the Court must ultimately reject defendant's claim.

■ At the heart of this case is defendant's possession of a driver's license bearing a social security number that did not belong to him. Although licensing division supervisor James gave extensive testimony regarding the manner in which an applicant traditionally obtains a Virgin Islands driver's license, the government proffered no evidence to show that defendant procured his license in this manner. Indeed, defendant's wife testified expressly to the contrary, stating that defendant bypassed the standard requirements. The absence of direct evidence of defendant's misrepresentation leaves the Court faced with the question of whether the jury could infer such misrepresentation, on these facts, from proof of possession alone.

Defendant, relying on the Eighth Circuit's decision in *United States v. McKnight, supra*, argues that this question must be answered in the negative. In *McKnight*, defendants were convicted for use of a social security number not assigned to them. In each case, the basis for the charge was that the defendant possessed a false identification card with a social security number on it which was not his or her own. The government at trial proffered nothing to indicate who had printed the cards; accordingly, the jury had no way to determine whether the defendants printed the cards themselves or obtained the false cards from third persons. The Court of Appeals, faced with this dearth of evidence, held that the bare fact of possession was insufficient to allow the jury to find defendants guilty. The Court first reasoned "that Congress, by

using the term represent, meant to proscribe the use, not merely the possession, of a false social security number. The term 'represent' connotes a positive action, not merely passive possession. . . . Had Congress intended to make mere possession of identification bearing a false social security number a crime, it certainly could have." *Id.* at 1144-45. The Court concluded that "in the present case, there exists insufficient direct or circumstantial evidence of use. Under the facts presented, proof of possession without more fails to create any credible inference that the social security numbers on the cards were misrepresented to anyone." *Id.* at 1145.

Notably, however, two of the concurring *McKnight* panel members wrote separately "to make explicit that possession of an identification card bearing a false social security number can, in some instances, provide a sufficient predicate for a jury to properly infer that a defendant falsely represented a social security number in violation of 42 U.S.C. § 408(a)(7)(B)." *Id.* at 1146. This, the Court believes, may be just such an instance. Here, unlike *McKnight*, the government adduced evidence regarding the source of defendant's license. The government demonstrated that (1) the Virgin Islands Police Department's licensing section had indeed printed defendant's license; and (2) generally, in order to obtain such a license, an applicant must proffer a social security number to the licensing agent; additionally, expert testimony indicated that the license bore defendant's thumbprint and signature. Such evidence is adequate — although perhaps barely so — to permit the jury to infer defendant's guilt despite the fact that no direct evidence of defendant's application was proffered. Were the jury to reject defendant's claim that he had purchased the license — a claim that the jury must have rejected — the jury would be free to infer that defendant procured the license in the standard manner, necessarily requiring the false representation of the social security number included on such license. Again, the Court cites for support an example proffered by the concurring judges in *McKnight*:

> an individual could apply for and receive at a social security office a duplicate social security card by using a false name and false social security number. That person has violated § 408(a)(7)(B) the moment he makes the false representation concerning his alleged social security

number, even before he makes any subsequent *use* of the card. A jury could reasonably convict a defendant who possessed the false duplicate card — without direct testimony that defendant made a false representation to procure the card — because it could infer that the defendant received the social security card through false representations. Thus, in some instances, possession without direct proof of use can justify a reasonable jury inference that a defendant violated § 408(a)(7)(B).

*Id.* at 1146.

Despite defendant's claims to the contrary, the jury refused to believe that defendant procured his license through "some phantom third-party." *United States v. Teitloff*, 55 F.3d 391, 394 (8th Cir. 1995) (upholding conviction under § 408(a)(7)(B) in similar circumstances). Rather, having weighed and considered the evidence, the jury concluded that defendant acquired the license through standard channels — a procurement that required the representation of a false social security number in violation of § 408(a)(7)(B).

The Court's denial of defendant's motion should not be read to suggest that the Court is pleased with the government's prosecution of this case. The evidence is clearly nominal. That said, however, the Court remains aware that it may "grant a motion for acquittal only when the evidence, viewed in a light most favorable to the prosecution, is so scant, so insufficient, that the jury could only speculate as to the defendant's guilt." *United States v. Scarfo*, 711 F. Supp. 1315, 1334 (E.D. Pa. 1989), *aff'd*, 910 F.2d 1084 (1990), *cert. denied*, 500 U.S. 915, 114 L. Ed. 2d 98, 111 S. Ct. 2009, 111 S. Ct. 2010, 111 S. Ct. 2011 (1991). The Court cannot say that defendant has met this standard. For this reason, the Court will deny defendant's motion.[2] An appropriate order is attached.

DATED: November 19, 1996

---

[2] In his motion for new trial, defendant makes a cursory challenge to the Court's admission, pursuant to Rule 404(b) of the Federal Rules of Evidence, of testimony regarding defendant's subsequent use of the same false social security account number included on his driver's license. The Court finds this challenge to lack merit.
Federal Rule of Evidence 404(b) provides as follows:

evidence of other crimes, wrongs or acts is not admissible to prove the character of

## ORDER

This matter comes before the Court on (1) the government's motion for an expedited ruling, and (2) defendant's motion for judgment of acquittal or, in the alternative, for a new trial. It is hereby

ORDERED that the government's Motion for an Expedited Ruling on the Papers is GRANTED. It is further

ORDERED, for reasons stated in the attached opinion, that defendant's Motion for Judgment of Acquittal or, in the alternative, for a New Trial is DENIED.

DATED: November 19th, 1996

---

a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

When deciding whether to admit "other acts" evidence under Rule 404(b), a trial court must consider two issues: first, whether the evidence is logically relevant to any issue other than the defendant's propensity to commit the crime; and second, whether the probative value of such evidence outweighs its prejudicial effect. *United States v. Himelwright*, 42 F.3d 777, 781 (3d Cir. 1994). The trial court is afforded substantial latitude in making these determinations. *Id.*

A review of the proffered testimony indicates, without doubt, that it is properly admissible under *Himelwright*. Defendant's use of the same false social security number does not merely evidence defendant's bad character, but rather is probative of defendant's intent to deceive, demonstrating that defendant's alleged misrepresentation was intentional and not the product of a mistake. *See Morrison v. United States*, 270 F.2d 1, 5 (4th Cir.) ("It certainly diminishes the possibility that an innocent mistake was made in an untrue and misleading statement, to show similar but misleading statements of the same person about the same matter, because it is less probable that one would make innocent mistakes of a false and misleading character in repeated instances than in once instance.), *cert. denied*, 361 U.S. 894, 4 L. Ed. 2d 150, 80 S. Ct. 196 (1959). Further, because intent to deceive is an element of the offense charged, defendant's intent is of consequence in this case. Although the evidence was prejudicial to defendant — as is most evidence offered against criminal defendants — such prejudice did not outweigh the clear probative value of the testimony. Accordingly, the admission of the challenged Rule 404(b) evidence provides no basis for granting a new trial.