**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**VINNY M. GAGLIANI, Defendant**

Criminal No. ST-08-CR-389
Superior Court of the Virgin Islands
Division of St. Thomas and St. John
June 11, 2009

CLAUDE E. WALKER, ESQ., Assistant Attorney General, Department of Justice, St. Thomas, USVI, *For the Plaintiff.*

GEORGE H. HODGE, JR., ESQ., St. Thomas, USVI, *For the Defendant.*

CARROLL, *Judge*

## MEMORANDUM OPINION

(June 11, 2009)

**THIS MATTER** is before the Court on Defendant Vinny Gagliani's Motion for New Trial with Points and Authorities which is based upon SUPER. CT. R. 135 and FED. R. CRIM. P. 33(b)(2). The Defendant, Vinny M. Gagliani ("Gagliani"), was represented by George Hodge, Esq., and the People of the Virgin Islands were represented by Assistant Attorney General Claude Walker, Esq. Because the Court finds that Defendant Gagliani had a fair trial, the Court will deny Defendant's motion for a new trial.

## BACKGROUND

Gagliani's Motion for New Trial is premised on several instances of alleged misconduct by the prosecutor. Gagliani complains that the People did not provide him with any witness statements prior to trial, other than a brief summary in an affidavit, executed by Investigator William Curtis, Jr. Gagliani also states that he never received a list of witnesses prior to trial although he made numerous requests before the trial for such a list. Defendant also states that evidence of prior bad acts was introduced during trial without sufficient advance notice to the Defendant. This evidence included testimony by Hanna Neumann ("Mrs. Neumann"), the wife of one of the victims, Manfred Neumann ("Neumann"), that Gagliani looked like a crook; statements by Neumann that Gagliani yelled

profanity at him; and evidence concerning a transaction for One Hundred Thousand Dollars ($100,000.00) contained in a bank statement that was introduced into evidence. Gagliani also states that the prosecutor referred to him as a thief and liar during the trial, including during the opening statement and summation. Finally, Defendant demands a new trial due to the prosecutor's failure to give notice that he was calling a witness as an expert in securities law and instead representing that the witness would testify about Defendant's lack of a license as a securities adviser. Gagliani argues that these examples of alleged prosecutorial misconduct entitle him to a new trial.

## STANDARD FOR GRANTING A NEW TRIAL

■ Gagliani's motion for new trial is based upon Rule 135 of the Superior Court Rules and Rule 33(b)(2) of the Federal Rules of Criminal Procedure. Superior Court Rule 135 states that a motion for new trial may be granted if required in the interest of justice.[1] Rule 33 of the Federal Rules of Criminal Procedure[2] also governs motions for new trial and states that a new trial may be granted if it is required in the interest of justice. *See U.S. v. Charles*, 35 V.I. 306, 949 F. Supp. 365, 368 (D.V.I. 1996) ("In assessing such 'interest,' the court may weigh the evidence and credibility of witnesses; if the court determines that there has been a miscarriage of justice, the court may order a new trial."); *Gov't of the V.I. v. Leycock*, 19 V.I. 59, 93 F.R.D. 569, 571 (D.V.I. 1982) (under

---

[1] SUPER. CT. R. 135 provides:

The Court may grant a new trial to a defendant if required in the interest of justice. The court may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. . . . A motion for a new trial based on [grounds other than newly discovered evidence] shall be made within 10 days after finding of guilty, or within such further time as the court may fix during the 10-day period.

[2] FED R. CRIM. P. 33 provides.

(a) Defendant's Motion. Upon the defendant's motion, the court may vacate any judgment and grant a new that if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.
(b) Time to File.

(1) *Newly Discovered Evidence* . . .
(2) *Other Grounds.* Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty.

"exceptional circumstances" the court may exercise its discretion to order a new trial when it is in the interests of justice).

■ The decision to grant or deny a motion for new trial is committed to the sound discretion of the trial court. It can be granted: (1) when after weighing the evidence, the court determines that there has been a miscarriage of justice, *Gov't of the V.I. v. Commissiong*, 706 F. Supp. 1172, 1184 (D.V.I. 1989); and (2) where there is a reasonable probability that trial error had a substantial influence on the jury verdict, *People of the Virgin Islands v. Brewley*, 49 V.I. 137, 141 (Super. Ct. 2007). In determining whether or not to grant a new trial in the interest of justice, the Court is accorded broad latitude. The Court is allowed to weigh and evaluate the testimony of the witnesses under a Rule 33 motion in reaching its determination as to whether a new trial should be ordered. *Id.* at 142.

Gagliani's arguments justifying a new trial may be evaluated individually and collectively under this standard. For the reasons stated below, this Court finds that his allegations of prosecutorial misconduct do not meet the standard of showing that there was a miscarriage of justice or that trial error had a substantial influence on the jury verdict.

## DISCUSSION

### 1. Witness Statements

Gagliani argues that no statement of a Government witness was presented to him prior to trial other than a brief summary in an affidavit. However, Gagliani points to no rule of law which requires that statements of witnesses be supplied to a defendant prior to trial as part of pretrial discovery. Indeed, the Federal Rules of Criminal Procedure explicitly excludes witness statements from discovery or inspection except in accordance with 18 U.S.C. § 3500. FED. R. CRIM. P. 16(a)(2).[3] Section 3500 requires the Government to turn over any statements of witnesses for the Government upon request of the Defendant only after the testimony of the witness on direct examination. *Colbourne v. Gov't of the V.I.*, No. Crim. App. 95-214, 1995 U.S. Dist. LEXIS 21392, *4, [WL] (D.V.I. Jan. 10, 1997).

---

[3] Pursuant to SUPER. CT. R. 7, "[t]he practice and procedure in the Superior Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, by . . . the Federal Rules of Criminal Procedure."

86

■ Gagliani does not argue that the People failed to turn over witness statements at trial after demand had been made for them. Rather, he argues that he did not receive the statements prior to trial and that this is prosecutorial misconduct of such a nature that a new trial should be granted in the interest of justice. Since the prosecutor has no duty to turn over statements prior to the testimony of the witnesses, it cannot be prosecutorial misconduct for the Assistant Attorney General not to supply witness statements prior to trial. Therefore, Gagliani's argument based on failure to turn over witness statements does not justify a new trial.

### 2. List of Trial Exhibits

■ Gagliani complains that he never received a list of trial exhibits from the People. The Court is not aware of, and Gagliani has not cited to, any rule that requires the People to produce a list of exhibits to the Defendant before trial. The selection of exhibits for trial is a matter which is within the discretion of the People and the Defendant. There is no provision in Rule 16 of the Federal Rules of Criminal Procedure which requires either side to provide a list of trial exhibits prior to trial. Under Rule 12(b)(4)(A)-(B) of the Federal Rules of Criminal Procedure the People or the defense may elect to disclose certain evidence before trial, but under Rule 16(d) the Court ultimately has broad discretion in these matters.

■ Defendant Gagliani did not make a showing of particular need for his request for a list of trial exhibits. Thus, it was well within the Court's discretion to deny his request. *See U.S. v. Cook*, 348 F. Supp.2d 22, 31 (S.D.N.Y. 2004) (court denied defendant's request that the government disclose its exhibit list prior to trial when defendant made no showing and did not even argue "that the disclosure of documents has been voluminous or that the Defendant's review of all of the documents would be so burdensome that it is necessary to require the Government to designate which items will be introduced,"); *Cf. U.S. v. Jackson*, 508 F.2d 1001, 1007-8 (7th Cir. 1975) (exchange of witness and exhibits lists ordered by court was a proper exercise of discretion when trial involved over 100 witnesses and over 100 exhibits). In this case, Defendant Gagliani made an oral motion prior to trial, on February 2, 2009, for a list of exhibits without particularizing the Defendant's need. Only twenty-eight (28) exhibits were introduced by the People during the course of trial. The Court did not abuse its discretion by denying Defendant's motion for a list

of exhibits under such circumstances. Since the Court did not abuse its discretion in denying Defendant Gagliani's request for a trial exhibit list, there is no error on this point which would require a new trial in the interests of justice.

### 3. Evidence of Prior Bad Acts

Defendant's contention that the People did not produce evidence of prior bad acts under 404(b) of the Federal Rules of Evidence is misplaced. That section provides that evidence of other crimes, wrongs or acts is not admissible for the purpose of proving the Defendant's character in order to show that he acted in conformity therewith, but may "be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or lack of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice" of the general nature of such evidence. FED. R. EVID. 404(b). Under this federal evidence rule, such notice shall be given "in advance of trial, or during trial if the court excuses pretrial notice on good cause shown. . . ." *Id.*

#### a. Proper Standard

■ Gagliani's reliance on 404(b) is not proper in this situation. The Supreme Court of the Virgin Islands has recently held that the Superior Court may not invoke Superior Court Rule 7[4] to apply the Federal Rules of Evidence to proceedings to the exclusion of the Uniform Rules of Evidence, codified at V.I. CODE ANN. tit. 5, §§ 771-956 (1997). *See Phillips v. People*, S. Ct. Crim. No. 2007-037, 2009 V.I. Supreme LEXIS 16, *28, [WL] (V.I. Mar. 12, 2009). Because V.I. CODE ANN. tit. 5, § 895 (1997) ("Section 895") covers the same subject matter as Federal Rule of Evidence 404(b) ("Rule 404(b)"), this Court is bound to apply Section 895 in lieu of Rule 404(b).

■ Section 895 provides that "evidence that a person committed a crime or civil wrong on a specified occasion[] is inadmissible to prove his disposition to commit crime or civil wrong on another specified occasion[,] but[] . . . such evidence is admissible when relevant to prove some other material fact including absence of mistake or accident,

---

[4] *See* n.3. *supra.*

motive, opportunity, intent, preparation, plan, knowledge or identity." Section 895 does not contain a provision for notice to the Defendant of the prosecution's intent to admit evidence of other crimes and wrongs upon prior request of the Defendant, and the Court cannot read such a provision for notice into the statute. "Where, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *First Merchants Acceptance Corp. v. J.C. Bradford & Co.*, 198 F.3d 394, 402 (3d Cir. 1999) (quoting *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989)), 109 S. Ct. 1026, 103 L. Ed. 2d 290 (internal citations and quotations omitted).

Since there is no provision for pretrial notice of prior crimes or wrongs in Section 895, the Defendant's argument that it was prosecutorial misconduct to fail to give such notice is without merit. Looking at the manner in which the alleged instances of prior crimes or civil wrongs were treated by the Court, explained in more detail below, Defendant was not denied a fair trial because of the introduction into evidence of any prior crimes or civil wrongs.

### b. Mrs. Neumann's Testimony

 Defendant points to a statement made by Mrs. Neumann that Gagliani looked like a crook. After reviewing the trial transcript in this matter, the Court was unable to find the testimony of Mrs. Neumann that Gagliani looked like a crook. Nevertheless, the Court does recall the witness blurting out that she thought Gagliani "looked like a crook" when she first met him. The Court immediately struck this statement from the record and advised the jury to disregard it. The instructions of the Court to ignore the statement were sufficient to eliminate any effect that it may have had on the jury. There was no error in this ruling, and Gagliani was not denied a fair trial because of the statement blurted out by the witness.

### c. Mr. Neumann's Testimony

 Gagliani also complains that Neumann testified that Gagliani cursed at him during one of his meetings after Neumann failed to give him a check for Two Hundred Thousand Dollars ($200,000.00). This testimony was not objected to by the Defendant; and if it was error, it would have to be reviewed under a plain error standard. *See* FED. R.

CRIM. P. 52.[5] "Plain error is defined as those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings.' " *Phillips*, 2009 V.I. Supreme LEXIS 16, *9 (quoting *Sanchez v. Gov't*, 34 V.I. 105, 921 F. Supp. 297, 300 (D.V.I. App. Div. 1996)).

█ █ The Court does not find any error in the admission of this evidence. The evidence complained of involved the testimony of Neumann that Gagliani allegedly reacted angrily when Neumann refused to give him an additional Two Hundred Thousand Dollars ($200,000.00) to invest and that he uttered profanities as he walked away from him. This evidence was relevant, because it described Gagliani's attempt to induce Neumann to give him an additional large sum of money and his reaction upon Neumann's refusal. The jury could have inferred from Gagliani's reaction that he was angry when he did not obtain additional money from Neumann. Gagliani's state of mind, in turn, was relevant to show that his intent was not to engage in a business transaction with Neumann, because the jury could conclude that a businessman would not have reacted in this manner to news that a client would not invest. The evidence that Gagliani cursed and walked away from Neumann is, therefore, relevant to show Gagliani's state of mind and is properly admissible under § 895. Eliciting relevant testimony cannot be described as prosecutorial misconduct.

### d. The Bank Statement

During the course of the trial, several bank statements, comprising Plaintiff's Exhibit 13, were introduced into evidence for the purpose of showing that when Gagliani gave Neumann a check for Twenty Thousand Dollars ($20,000.00), the bank account on which the check had been drawn had already been closed. The statements were introduced to show that the bank account had been opened on November 1, 2006, with a deposit of Fifty Dollars ($50.00) and closed several months later on January 17, 2007, with a negative balance of Seventy-Five Dollars ($75.00). When Gagliani wrote the check on January 20, 2007, to

---

[5] Rule 52. Harmless and Plain Error
 (a) Harmless Error. Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.
 (b) Plain Error. A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.
FED. R. CR. P. 52.

Neumann, the account had already been closed. The evidence, therefore, was relevant to show that when Gagliani wrote the check on January 20, 2007, he knew that the check was worthless.

Gagliani complains that he had no opportunity to redact the One Hundred Thousand Dollar ($100,000.00) transaction that appeared on the bank statement and that this constitutes a prejudicial error rising to a level of unfairness that requires a new trial. During an in-chamber conference prior to jury selection on February 2, 2009, defense counsel made an oral motion to redact the document in question, if it was offered by the People. Defense counsel was told to raise his objection again at the proper time. Defense counsel later failed to request that the document be redacted before it was submitted to the jury for its use during deliberation, even though he was given an opportunity to do so.

It is true that the specific transaction involving One Hundred Thousand Dollars ($100,000.00) was not in and of itself relevant to the facts on trial, but the bank statement that contained the transaction was relevant to show that Gagliani wrote a check knowing that the bank account had insufficient funds to cover it. In going through the bank statement, the prosecutor did mention the transaction in question, but it was part of explaining the bank statement exhibit to the jury.

■■■ Since there was no objection to the unredacted bank statement being submitted to the jury, the Court must review the alleged trial error under a plain error standard.[6] The One Hundred Thousand Dollar ($100,000.00) transaction that appeared in the bank account exhibit was never referred to again during the course of the trial, and no mention of it was made during the course of the summation. The likelihood is that the jury did not dwell upon this bit of evidence during their deliberations and there was sufficient additional evidence that Gagliani duped Neumann. Under the circumstances, the failure to redact the exhibit is not plain error and Gagliani was not deprived of a fair trial by virtue of this evidence being introduced to the jury.

### 4. Improper Remarks

According to Gagliani, the People kept referring to him as a liar and thief. Indeed, the prosecutor referred to Gagliani during the opening

---

[6] *See* n.5, *supra.*

statement without objection as a "lying con man," and during the prosecutor's summation, Gagliani was referred to as a "lying con man" and a "liar." This was strong language, but Defendant did not object to the language used, and Defendant was on trial for crimes that involved deceit, as the prosecutor argued to the jury.

Improper remarks by the prosecution during closing arguments are not *per se* grounds for a new trial. *United States v. Zehrbach*, 47 F.3d 1252, 1264 (3d Cir. 1995) (overruling *United States v. DiLoreto*, 888 F.2d 996 (3d Cir. 1989)). Rather, to determine prejudice, an appellate court must "consider the scope of the objectionable comments and their relationship to the entire proceeding, the ameliorative effect of any curative instructions given, and the strength of the evidence supporting the defendant's conviction." *Id.* (citing *United States v. Gambino*, 926 F.2d 1355, 1365 (3d Cir. 1991), *cert. denied sub nom. Mannino v. United States*, 501 U.S. 1206, 111 S. Ct. 2800, 115 L. Ed. 2d 973 (1991)).

The prosecutor apologized for the name-calling, but supported these allegations from facts in the record. Under the circumstances, the Defendant was not denied a fair trial by virtue of the comments made by the prosecutor in the opening statement and the closing summation.

### 5. Deverita Sturdivant's Testimony

Gagliani's representation that the People introduced Deverita Sturdivant ("Attorney Sturdivant") to present expert testimony on securities law is factually inaccurate. A review of her testimony shows that on direct examination, Attorney Sturdivant, the Chief of Securities Registration for the Office of the Lieutenant Governor, Division of Banking and Insurance, testified about her duties involving overseeing the registration of investment advisors and other investment products in the Virgin Islands; the duty to register as an investment advisor when one holds oneself out as an investment advisor, and the fact that Gagliani should have registered as an investment advisor if he was giving investment advice.

The People did not ask any questions of Attorney Sturdivant regarding securities laws and did not try to qualify her as an expert in that area. Questions of this type were not asked until cross-examination of Attorney Sturdivant by defense counsel. Since his defense attorney opened the door to the questioning of a witness for the prosecution as an expert witness, Gagliani cannot complain that the People engaged in

92

prosecutorial misconduct by tendering the witness as an expert without giving notice to him. Under this set of facts, the Court cannot find that the Defendant was denied a fair trial by the questions asked by the prosecutor of Attorney Sturdivant. These questions, as noted above, were strictly limited to a factual inquiry as to whether Gagliani had improperly given investment advice to the public by holding himself out as an investment advisor without registering as one.

 Even if Attorney Sturdivant had testified as an expert witness without being first qualified to do so, this would not have been improper. Under *Phillips*, we have to look to the Uniform Rules of Evidence and not the Federal Rules of Evidence in dealing with evidentiary matters. 2009 V.I. Supreme LEXIS 16 at *6, [WL]. The pertinent section in the Virgin Islands Code regarding the admissibility of expert testimony reads as follows:

> (1) If the witness is not testifying as an expert his testimony in the form of opinions or inferences is limited to such opinions or inferences as the judge finds (a) may be rationally based on the perception of the witness and (b) are helpful to a clear understanding of his testimony or to the determination of the fact in issue.

> (2) If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (a) based on facts or data perceived by or personally known or made known to the witness at the hearing and (b) within the scope of the special knowledge, skill, experience or training possessed by the witness.

> **(3) Unless the judge excludes the testimony he shall be deemed to have made the finding requisite to its admission.**

> (4) Testimony in the form of opinions or inferences otherwise admissible under this chapter is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact.

V.I. CODE ANN. tit. 5, § 911 (1997) (emphasis added).

 Gagliani does not argue that Attorney Sturdivant would not have been properly qualified as an expert witness, but rather that the People did

not give him advance notice of offering her as an expert in the area of securities law. Since the People did not in fact offer her testimony in this area until after the Defendant had opened the door to extensive cross-examination regarding her expertise in securities law, the People did not have to give Gagliani notice that the witness would be offering expert testimony. Furthermore, once Gagliani commenced to ask the witness questions relative to securities law, and the testimony was not excluded, it is presumed that the requisite findings of expertise regarding the testimony would have been made without a specific finding on the record.

## CONCLUSION

Based on the arguments presented, the Court finds that the Defendant has not demonstrated that there was any prosecutorial misconduct that resulted in his being denied a fair trial. The motion for a new trial will, therefore, be denied. An appropriate Order will follow.